**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **THOMAS E. PEREZ,** | : | **CIVIL ACTION** |
|  | : |  |
| *Plaintiff,* | : |  |
|  | : |  |
| **v.** | : | **No. 16-cv-1079** |
|  | : |  |
| **LLOYD INDUSTRIES, INC., ET AL.,** | : |  |
|  | : |  |
| *Defendants.* | : |  |
|  | : |  |

**Goldberg, J.**                                                                                   **August 1, 2019**

## MEMORANDUM OPINION

The Occupational Safety and Health ("OSH") Act, 29 U.S.C. § 660, prohibits an employer from terminating employees for filing complaints or otherwise exercising rights afforded by the Act, including informing the Occupational Safety and Health Administration ("OSHA") about unsafe conditions. Following a five-day trial, a jury found that Lloyd Industries, Inc. ("Lloyd Industries") and William Lloyd (collectively, "Defendants") violated this Act by terminating two employees, Mr. Matthew Spillane and Mr. Santos Sanna, in retaliation for assisting OSHA in identifying safety hazards at Lloyd Industries.

Presently before me is Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial. Defendants argue the jury instructions were defective because they improperly included the "perception theory" of liability, the "third party theory" of liability, and the "substantial reason" causation standard. Defendants also assert that the verdict was not supported by sufficient evidence.

For the foregoing reasons, I conclude that the jury instructions were proper, and the verdict was sufficiently supported by evidence. Accordingly, Defendants' Motion will be denied.

## I.    BACKGROUND

Plaintiff Thomas Perez,[1] the U.S. Secretary of the Department of Labor (the "Secretary"), brought claims on behalf of two discharged employees against their employer, Defendants Lloyd Industries and Mr. Lloyd, alleging violations of the OSH Act.  Prior to trial, I considered several motions *in limine* and determined that, pursuant to the OSH Act, 29 U.S.C. § 660(c)(2), the trial would be bifurcated into two phases: (a) the liability phase decided by a jury, and (b) the damages phase decided by the court.  (Order, Mar. 29, 2019, ECF No. 69.)

The liability phase of the trial began on March 27, 2019 and concluded on April 2, 2019. During the trial, the following timeline was established: Mr. Sanna began working for Defendants on July 28, 2008.  (Am. Trial Tr., 201:6–15, Mar. 28, 2019, ECF No. 96.)  Mr. Spillane began working for Defendants on May 7, 2014.  (Id. 117:9–12.)  Mr. Joshua Elbode, who is not a party to this lawsuit, sustained a serious injury that resulted in amputation of several fingers while working for Defendants in July of 2014.  (Id. 91:6–16; Am. Trial Tr. vol. 2, 70:9–71:12, Mar. 27, 2019, ECF No. 95.)  In October of 2014, Mr. Elbode filed a complaint with OSHA.  (Am. Trial Tr. vol. 2, 77:25–78:18, Mar. 27, 2019, ECF No. 95.)  OSHA inspected Defendants' plant on November 13, 2014.  (Am. Trial Tr., 105:20–24, Mar. 28, 2019, ECF No. 96.)  Mr. Spillane was terminated five days later on November 18, 2014.  (Id. 105:15–19.)  Mr. Sanna provided testimony to OSHA in February of 2015.  (Am. Trial Tr., 42:20–43:15, Mar. 29, 2019, ECF No. 97.)  OSHA issued citations against Defendants in the amount of $822,000 on May 11, 2015.  (Id. 103:13–16.) Mr. Sanna was terminated on that same day.  (Id. 103:19–25.)

---

[1]    When this action was filed, the Secretary of the Department of Labor was R. Alexander Acosta.  The current Secretary is Thomas Perez.

A.      **Evidence Relating to Mr. Spillane**

Mr. Spillane began working for Defendants on May 7, 2014 in the access door department, assembling the access doors of duct systems.  (Am. Trial Tr., 86:17–25, 117:9–12, Mar. 28, 2019, ECF No. 96.)  Mr. Spillane testified that, in July and August of 2014, he took pictures of the machine that caused Mr. Elbode's injury.  (Id. 93:25–102:11.)  Mr. Rene Santos, another Lloyd Industries' employee, testified that he told Mr. Lloyd about seeing Mr. Spillane taking pictures of the machine that caused Mr. Elbode's injury.  (Am. Trial Tr., 147:23–149:7, Mar. 29, 2019, ECF No. 97.)  Mr. Lloyd confirmed that he had been told about Mr. Spillane taking photos of this particular machine.  (Id. 90:25–92:22.)  Mr. Spillane testified that Mr. Lloyd "spied" on Mr. Sanna and him, whereby Mr. Lloyd observed them conversing together in the supply closet at some point shortly before the OSHA inspection started.  (Am. Trial Tr., 102:19–106:22, Mar. 28, 2019, ECF No. 96.)  Mr. Lloyd admitted that he told Mr. Richard Smith, who was another Lloyd Industries' employee, that he believed that there was a "rat" in the plant who was feeding information to OSHA.  (Am. Trial Tr., 147:23–149:7, Mar. 29, 2019, ECF No. 97.)

Mr. Lloyd also acknowledged that he knew that Mr. Spillane and Mr. Elbode had worked together in the Access Door Department, and that Mr. Elbode had filed the OSHA complaint.  (Id. 90:15–24, 112:4–12.)  Mr. Lloyd acknowledged that he had observed that the OSHA inspectors immediately wanted to inspect the machine that Mr. Spillane had photographed.  (Id.)

Mr. Lloyd also testified that, prior to terminating Mr. Spillane, he had never disciplined Mr. Spillane or warned him about any performance deficiencies.  (Id. 96:9–19.)  Nevertheless, Mr. Lloyd terminated Mr. Spillane five days after the OSHA inspection began without providing any explanation.  (Id. 95:25–96:5, 100:16–17.)  Mr. Lloyd did so even though he acknowledged that, in other previous situations, he had discussed any concerns with the other employees prior to

terminating them. (Id. 96:17–100:12.) Mr. Lloyd explained that he terminated Mr. Spillane because he was a bad worker and slept in his car while on the clock, which was "basically the same thing as stealing money." (Id. 104:1–109:14, 125:20–128:16; Am. Trial Tr., 24:1–27:8, 118:22–120:11, 126:11–129:1, Apr. 1, 2019, ECF No. 98.) However, Mr. Lloyd acknowledged that he knew that Mr. Spillane had been sleeping in the car two months before Mr. Spillane's termination because another employee, Rene Santos, told him about it. (Am. Trial Tr., 143:9–147:22, Mar. 29, 2019, ECF No. 97.) Mr. Russell Murphy, another Lloyd Industries employee, testified that Mr. Lloyd did not know about Mr. Spillane sleeping in the car until after Mr. Spillane was terminated. (Am. Trial Tr., 119:2–128:16, Mar. 29, 2019, ECF No. 97.)

## B.     Evidence Relating to Mr. Sanna

Mr. Sanna began working for Defendants on July 28, 2008 as the plant manager. (Am. Trial Tr., 201:6–15, Mar. 28, 2019, ECF No. 96.)[2] Mr. Sanna provided testimony to OSHA on February 23, 2015, as part of OSHA's investigation of Lloyd Industries following the inspection of the plant in November of 2014. (Id. 102:19–106:22.) Mr. Lloyd acknowledged that, while he knew that Mr. Sanna had provided information to OSHA, he did not know what information was provided. (Am. Trial Tr., 112:4–113:3, Mar. 29, 2019, ECF No. 97.) Mr. Lloyd also acknowledged that he fired Mr. Sanna on May 11, 2015, immediately after he received the OSHA citations. (Am. Trial Tr., 109:15–112:15, Mar. 29, 2019, ECF No. 97.)

Mr. Lloyd explained that he fired Mr. Sanna without providing him with an explanation because Mr. Sanna was in charge of safety and health at the plant and the OSHA citations led Mr. Lloyd to conclude that Mr. Sanna had failed in those duties. (Am. Trial Tr., 235:19–237:1, Mar.

---

[2]     Mr. Lloyd also testified that Mr. Elbode was Mr. Sanna's grandson, and that he hired Elbode upon Mr. Sanna's request. (Am. Trial Tr., 100:20–101:1, Mar. 29, 2019, ECF No. 97.)

28, 2019, ECF No. 96; Am. Trial Tr., 103:13–25, 109:15–112:15, Mar. 29, 2019, ECF No. 97.) Yet, Mr. Lloyd acknowledged that he did not ask Mr. Sanna about his knowledge and experience regarding plant safety and health when Mr. Sanna was hired. (Am. Trial Tr., 212:19–213:1, Mar. 28, 2019, ECF No. 96.) And Mr. Lloyd admitted that Mr. Sanna was never asked to perform safety inspections, provide safety training, or discuss safety responsibilities in the plant. (Am. Trial Tr., 212:19–213:1, Mar. 28, 2019, ECF No. 96.)[3] Despite the fact that Mr. Lloyd knew that OSHA was likely going to inspect the plant, he never informed Mr. Sanna of this possibility as he did not want Mr. Sanna to be involved with the OSHA inspection. (Am. Trial Tr., 27:8–28:23, Mar. 29, 2019, ECF No. 97; Am. Trial Tr., 79:1–12, Apr. 1, 2019, ECF No. 98.) In fact, Mr. Lloyd testified that, as the owner, he was ultimately responsible for the plant's safety and health at Lloyd Industries. (Am. Trial Tr., 65:1–70:10, Apr. 1, 2019, ECF No. 98.)

### C. Defendants' Motion for Judgment as a Matter of Law

At the close of the Secretary's case-in-chief, and at the conclusion of the evidence, Defendants moved for judgment as a matter of law on the following bases: (a) the Secretary could not establish liability by arguing that Mr. Spillane was "perceived" to have engaged in a protected activity (i.e., the "perception theory"); (b) the Secretary could not establish liability by arguing that Mr. Spillane and Mr. Sanna engaged in a protected activity by supporting Mr. Elbode's OSHA complaint; and (c) the Secretary could not establish causation between the protected activity and the terminations. (Defs.' Br. in Supp. Mot. for J. 1–2, ECF No. 68-1.)

On April 2, 2019, prior to giving the case to the jury for deliberation, I heard oral argument on this Motion. (Order, Apr. 2, 2019, ECF No. 74.) Defendants objected to the inclusion of the

---

[3]     The jury also heard testimony that Mr. Lloyd refused to hire a company to do hearing testing because it was too expensive. (Am. Trial Tr., 65:1–71:11, Apr. 1, 2019, ECF No. 98.)

"perception theory" in the jury instructions, arguing that an employee must actually engage in a protected activity under the OSH Act. (Am. Trial Tr., 6:16–10:9, Apr. 2, 2019, ECF No. 99.) I overruled Defendants' objection, concluding that "[t]he whole policy reason for the [OSH Act] is to create an atmosphere where persons feel that they should be able to without retribution interfere with OSHA and I think the case law supports the charge." (Id.)

Defendants also objected to the inclusion of Mr. Spillane and Mr. Sanna's close relationship with Mr. Elbode in the jury instructions, arguing that Mr. Elbode did not engage in a protected activity under the OSH Act because he was not an employee at the time that he filed the complaint with OSHA. (Id. 10:17–14:13.) The Secretary responded that, pursuant to the regulations promulgated under the OSH Act, the proper question was whether Mr. Spillane and/or Mr. Sanna were employees at the time they engaged in a protected activity, and not whether Mr. Elbode was an employee. (Id. 14:14–25.) Based on the Secretary's response, I overruled Defendants' objection. (Id. 15:1–2.)

Similarly, Defendants objected to the inclusion of Mr. Spillane's close relationship with Mr. Elbode in the jury instructions, arguing that Mr. Elbode did not have a "protected relationship" under the caselaw. (Id. 16:23–18:13.) I overruled this objection, finding that I had already ruled on this issue. (Id. 18:24–19:16.)

Finally, Defendants objected to the causation standard used in the jury instructions (which included both the "but for" and "substantial reason" tests), arguing that recent U.S. Supreme Court decisions applying Title VII support the proposition that only the "but for" test is proper. Defendants also argued that the regulations promulgated under the OSH Act should be "ignored" and "stricken." (Id. 19:24–22:8.) I overruled this objection, finding that the regulations clearly

provide two causation tests, and noted that recent district court decisions have supported a jury charge that included both the "but for" and "substantial reasons" tests. (Id. 22:9–23:21.)

### D. <u>Jury Instructions and Verdict</u>

Because Defendants raise several challenges to the jury instructions, I will summarize the pertinent portions below.

The jury was first briefly instructed on the OSH Act in general and was reminded that "this case is not about whether defendant Lloyd Industries or Mr. Lloyd complied with the safety and health standards under [t]he Act." (Id. 42:1–43:1.) The jury was then told that the Secretary had to prove each of the following three elements by a preponderance of the evidence: (a) Mr. Spillane and Mr. Sanna each engaged in a "protected activity," (b) Mr. Spillane and Mr. Sanna were terminated, and (c) there was a causal connection between the protective activities and the terminations. (Id. 43:1–47:13, 44:4–7.) I then explained each element in greater detail.

As it relates to Mr. Spillane, I instructed that the Secretary first had to establish that Mr. Spillane engaged in a "protected activity" under one of the following theories:

> A, Mr. Spillane engaged in a protected activity by taking photographs of the plant and providing information to Mr. Elbode which caused OSHA to inspect Lloyd Industries; or B, defendants suspected or perceived that Mr. Spillane had engaged in a protected activity; or C, defendants believed or suspected that Mr. Spillane had a close relationship with Mr. Elbode who engaged in the protected activity, again, <u>i.e.</u> the filing of the complaint with OSHA.

(Id. 44:4–17.) Second, I instructed that the Secretary had to prove that "Lloyd Industries subjected Mr. Spillane to a materially adverse action at the time or after the protected conduct took place." (Id. 44:18–21.) Third, I instructed that the Secretary had to prove "a causal connection between Mr. Spillane's termination from Lloyd Industries and his engagement with protected activity which I just described to you." (Id. 44:22–45:1.)

As it relates to Mr. Sanna, I likewise instructed the jury that the Secretary first had to establish that Mr. Sanna engaged in a "protected activity" under one of the following theories:

> A, Mr. Sanna engaged in a protected activity by testifying during the OSHA investigation; and/or, the defendants believed or suspected that Mr. Sanna had a close relationship with Mr. Elbode who engaged in a protected activity, again, the filing of the OSHA complaint.

(Id. 45:12–17.)   Second, I instructed that the Secretary had to prove that "Lloyd Industries subjected Mr. Sanna to a materially adverse action at the time or after the protected conduct took place."   (Id. 45:18–22.)   Third, I instructed that the Secretary had to prove "a causal connection between Mr. Sanna's termination from Lloyd Industries and his engagement in protected activity." (Id. 45:22–25.)

I further instructed the jury as follows:

> In order to engage in a protected activity, the employee does not have to directly institute the proceedings and it is sufficient if he sets into motion the actions of others which result in perceived -- an OSHA [proceeding].   Additionally, termination can be found to be retaliatory where the terminated employee did not himself engage in a protected activity but had a close relationship with the individual who did.   Finally, retaliation can be found based upon the mistaken belief or perception that the employee had engaged in a protected activity.

(Id. 46:8–17.)

As to the element of causation, I instructed that the Secretary had to establish by preponderance of the evidence "either that A, the protected activity was a substantial reason for the action; or B, the discharge or other adverse action took place because of the engagement in the protected activity."   (Id. 46:24–47:5.)   I elaborated on this instruction as follows:

> That is the secretary must show you that A, Mr. Spillane was fired because of his engagement in a protected activity; or B, Mr. Spillane's engagement in a protected activity was a substantial reason for his termination. Similarly, the secretary must show, must prove that A, Mr. Sanna was fired because of his engagement in a protected activity; or B, Mr. Sanna's engagement in a protected activity was a substantial reason for his termination.

(Id. 47:6–13.)

On April 2, 2019, after concluding the deliberations, the jury answered the interrogatories as follows:

> 1. Did the Secretary prove by a preponderance of the evidence that Defendants, Lloyd Industries Inc. ("Lloyd Industries") and Mr. William Lloyd, terminated Mr. Spillane in November 2014 because he engaged in a "protected activity"?
>     Yes __X__          No _____

> * * *

> 3. Did the Secretary prove by a preponderance of the evidence that Defendants, Lloyd Industries Inc. ("Lloyd Industries") and Mr. William Lloyd, terminated Mr. Sanna in May 2015 because Mr. Sanna engaged in a "protected activity"?
>     Yes _____          No __X__

> 4. Did the Secretary prove by a preponderance of the evidence that Mr. Sanna's engagement in a "protected activity" was a substantial reason for his termination in May 2015?
>     Yes __X__          No _____

(Verdict Sheet, Apr. 2, 2019, ECF No. 75; see also Am. Trial Tr., 105:21–113:6, Apr. 2, 2019, ECF No. 99.)

### E.      Defendants' Renewed Motion for Judgment as a Matter of Law

Presently before me is Defendants' Renewed Motion for Judgment as a Matter of Law and/or a New Trial. (Defs.' Mot., ECF No. 85.) Defendants have again raised issues regarding (a) Mr. Spillane's failure to engage in a protected activity, (b) the improper use of the "perception theory," (c) the improper reliance on Mr. Elbode's complaint to establish a *prima facie* case of retaliation, and (d) the improper causation standard. Defendants have also raised sufficiency of the evidence arguments, alleging that they have proven legitimate, non-retaliatory reasons for both Mr. Spillane and Mr. Sanna's terminations, which were not refuted by any showing of pretext. (Defs.' Mem. of Law 13–35, ECF No. 85-1.) Defendants have also moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a), arguing that the jury was improperly instructed on

(a) the third-party claims, (b) the perception theory of liability, and (c) the "substantial factor" causation standard. (Id. 35–37.)

The Secretary responds that the regulations and supporting caselaw clearly provide that a protected activity includes actions that "set into motion activities of others which result in proceedings under or related to the Act." (Resp. 3–4, ECF No. 90.) The Secretary also posits that the regulations provide both the "but for" and "substantial factor" causation standard, and that the "perception theory" and "close relationship theory" are legally viable under established Third Circuit precedent. (Id. 6–12.) Finally, the Secretary argues that sufficient evidence exists to support the verdicts as to both Mr. Spillane and Mr. Sanna, emphasizing that the jury heard and rejected the evidence of Defendants' purported business purpose for the terminations. (Id. at 15–16, 19–20.)

For the following reasons, I agree with the Secretary and will deny Defendants' Motion.

## II.   STANDARDS OF REVIEW

### A.   <u>Renewed Judgment as a Matter of Law</u>

Federal Rule of Civil Procedure 50(a) provides that the court may grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A renewed motion for judgment as a matter of law may be granted only if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001) (quotation marks and citations omitted).

"Entry of judgment as a matter of law is a sparingly invoked remedy, granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of

every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). When conducting this "narrow inquiry," courts "must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [their] own version of the facts for that of the jury." Id.

**B.      New Trial**

Following a jury trial, the court may "grant a new trial on all or some of the issues—and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

## III.  DISCUSSION

Defendants have moved for judgment as a matter of law or, in the alternative, a new trial. (Defs.' Mem. of Law 1–2, ECF No. 85-1.) Specifically, Defendants argue that such relief is proper because (a) the "perception theory" is not valid under the OSH Act, (b) "third party claims" are invalid under the OSH Act, (c) Mr. Elbode's complaint to OSHA did not constitute a "protected activity," and (d) the jury was instructed on an improper causation standard. (Id.) Defendants also argue that there is insufficient evidence to support the verdicts. I will address each argument in turn below.

**A.      Objections to the Jury Instructions**

The jury instructions at issue are cited in full supra. For purposes of addressing the specific objections raised by Defendants, I will quote the pertinent portions below.

**(1)      Perception Theory**

I instructed the jury that the Secretary first had to establish that Mr. Spillane and Mr. Sanna engaged in a "protected activity" under one of the several possible theories, including that "defendants suspected or perceived" that they engaged in a protected activity. (Am. Trial Tr.,

44:4–17, 45:12–17, Apr. 2, 2019, ECF No. 99.)  Defendants have moved for a new trial and/or judgment as a matter of law, arguing that the jury instructions improperly allowed for liability under the "perception theory" (i.e., the employee does not engage in a protected activity, but is believed to have engaged in one).  (Defs.' Mem. of Law 9–11, ECF No. 85-1.)  The Secretary responds that the "perception theory" is legally viable under established Third Circuit precedent. (Resp. 6–8, ECF No. 90.)

The United States Court of Appeals for the Third Circuit has consistently found that the "perception theory" is a valid theory of liability for retaliation.  See, e.g., Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571–72 (3d Cir. 2002) (holding that "perception" theory is valid basis for liability under ADA anti-retaliation provision); Brock v. Richardson, 812 F.2d 121, 124–25 (3d Cir. 1987) (finding that termination based on the employer's erroneous belief that the employee engaged in a protected activity triggered liability under the FLSA anti-retaliation provision).

Defendants' citations in opposition are distinguishable.  First, Defendants cite Scheidler v. Indiana, et al., 914 F.3d 535 (7th Cir. 2019) in support of their theory that neither Mr. Spillane or Mr. Sanna has standing to sue.  However, Scheidler does not support this theory because the Seventh Circuit held that "a person aggrieved by retaliation has standing to sue for it even if that person did not engage in the protected activity but someone else did."  Id. at 543 (citing Thompson v. N. Am. Stainless, 562 U.S. 170, 173–79 (2011)).

Defendants reliance on Scheidler is also factually misplaced.  In Scheidler, plaintiff argued that she was terminated for engaging in a protected activity by making the comment that "it's who you know and who you blow."  The Seventh Circuit disagreed, holding that the plaintiff failed to establish retaliation under Title VII because neither party thought that the plaintiff's comment constituted a discrimination complaint, the plaintiff testified that her comment was not rooted in

gender, and there was no evidence that the employer engaged objectively in any discriminatory action. Id. at 543–44. In contrast, the Secretary here introduced evidence of retaliation for the engagement in a protected activity, including that Mr. Spillane took pictures of the machine that caused Mr. Elbode's injury, Mr. Lloyd knew that Mr. Spillane had taken these pictures, an OSHA investigation ensued, and Mr. Lloyd admitted that he told another Lloyd Industries' employee that there was a "rat" in the plant feeding information to OSHA. (Am. Trial Tr., 93:25–102:11, Mar. 28, 2019, ECF No. 96; Am. Trial Tr., 90:25–95:22, 147:23–149:7, Mar. 29, 2019, ECF No. 97.) Mr. Lloyd also testified that he knew that Mr. Elbode had filed the OSHA complaint and fired Mr. Spillane within five days of the OSHA inspection. (Am. Trial Tr., 90:15–24, 112:4–12, Mar. 29, 2019, ECF No. 97.)

Defendants also cite Digital Realty Trust, Inc. v. Somers, 138 S. Ct. 767, 778 (2018) in support of their argument that Mr. Elbode had to be an employee at the time that he filed the complaint with OSHA in order for the perception theory to be viable. However, Digital is distinguishable because the United States Supreme Court interpreted the Dodd-Frank Act, finding that the Act clearly defines whistleblower such that the "anti-retaliation provision covers employees who report fraud not only to the SEC, but also to any other federal agency, Congress, or an internal supervisor." Digital, 138 S. Ct. at 778 (citing 18 U.S.C. § 1514A(a)(1)). In contrast, the OSH Act does not contain any such specificity, and the OSH Act's purpose clearly contemplates liability where the employer suspects that the employee engaged in a protected activity. Reich v. Hoy Shoe Co., Inc., 32 F.3d 361, 367–69 (8th Cir. 1994) ("Construing § 11(c), the OSH Act's anti-retaliation provision, to protect employees from adverse employment actions because they are suspected of having engaged in protected activity is consistent with the general purposes of the Act and the specific purposes of the anti-retaliation provisions.").

### (2)    Mr. Spillane's Protected Activity

As it relates to Mr. Spillane, I instructed the jury that the Secretary first had to establish that Mr. Spillane engaged in a "protected activity" under one of the following theories:

> A, Mr. Spillane engaged in a protected activity by taking photographs of the plant and providing information to Mr. Elbode which caused OSHA to inspect Lloyd Industries; or B, defendants suspected or perceived that Mr. Spillane had engaged in a protected activity; or C, defendants believed or suspected that Mr. Spillane had a close relationship with Mr. Elbode who engaged in the protected activity, again, i.e. the filing of the complaint with OSHA.

(Am. Trial Tr., 44:4–17, Apr. 2, 2019, ECF No. 99.)

Defendants have moved for a new trial and/or judgment as a matter of law, arguing that the Secretary failed to establish that Mr. Spillane engaged in a protected activity because he did not personally file a complaint with OSHA until after his termination.  (Defs.' Mem. of Law 8–9, 19–20, ECF No. 85-1.)  The Secretary responds that the OSH Act regulations provide that a protected activity includes actions that "set into motion activities of others which result in proceedings under or related to the Act."  (Resp. 3–4, ECF No. 90.)

The relevant regulations defining the scope of § 11(c) clearly reflect that the evidence presented to the jury regarding Mr. Spillane constituted a protected activity.  See 29 C.F.R. § 1977.10(b) ("An employee need not himself directly institute the proceedings.  It is sufficient if he sets into motion activities of other which result in proceedings under or related to the Act."); Donovan v. R. D. Andersen Constr. Co., 552 F. Supp. 249 (D. Kan. 1982) (finding that an employee's communication with the media about workplace conditions sufficiently "set into motion" the activities of others that resulted in OSHA proceedings).  Here, Mr. Spillane took pictures of the machine involved in Mr. Elbode's injury, which led to the OSHA investigation. (Am. Trial Tr., 93:25–102:11, Mar. 28, 2019, ECF No. 96.)  Rene Santos, who was another Lloyd Industries' employee, testified that he saw Mr. Spillane taking pictures of this machine and told

Mr. Lloyd about it. (Am. Trial Tr., 147:23–149:7, Mar. 29, 2019, ECF No. 97.) Mr. Lloyd acknowledged that he knew that Mr. Spillane had taken pictures of this particular machine. (Id. 90:25–92:22.) Mr. Lloyd also testified that "the first thing [OSHA] wanted to look at was that machine" when they arrived for the inspection in November of 2014. (Id. 95:25–96:5.) And again, Mr. Spillane was terminated five days after the OSHA inspection.

Accordingly, Defendants' Motion will be denied on this issue.

### (3)       The Third-Party Theory

Defendants argue that the jury was improperly instructed on the "third-party claim" theory because Mr. Elbode did not engage in a protected activity while he was an employee as he filed the complaint with OSHA after his termination. (Defs.' Mem. of Law 11–14, 18–19, ECF No. 85-1.) The Secretary responds that the OSH Act permits a third-party theory of recovery even where the relationship is with a person who did not engage in a protected activity, but the employer believes that he did. (Resp. 8–12, ECF No. 90.) On this issue, the jury was instructed as follows:

> I talked about, as it relates to both of those employees, the first element was protected activities. Concerning this first element, the secretary need not prove the merits of the complaint filed with OSHA or the content of the testimony provided during the OSHA investigation, but only that Mr. Spillane and Mr. Sanna each engaged in a protected activity.

> In order to engage in a protected activity, the employee does not have to directly institute the proceedings and it is sufficient if he sets into motion the actions of others which result in perceived -- an OSHA [proceeding]. Additionally, termination can be found to be retaliatory where the terminated employee did not himself engage in a protected activity, but had a close relationship with the individual who did. Finally, retaliation can be found based upon the mistaken belief or perception that the employee had engaged in a protected activity.

(Am. Trial Tr., 46:1–17, Apr. 2, 2019, ECF No. 99.)

Defendants focus on Mr. Elbode's status as an employee is completely misplaced. The proper focus here is on Mr. Spillane and Mr. Sanna. An employer can be liable under the OSH

Act where the individual alleges discrimination (i.e., Mr. Spillane and Mr. Sanna) based on a close relationship with another person (i.e., Mr. Elbode) who either (a) engaged in a protected activity or (b) was believed to have engaged in a protected activity. See Reich v. Cambridgeport Air Sys., Inc., 26 F.3d 1187, 1189 (1st Cir. 1994). In Reich, the United States Court of Appeals for the First Circuit found that there "was sufficient evidence to support the court's finding that [the plaintiff] was terminated because of his connection with [another employee]" where they were "particularly close friends," management knew they were close friends, a supervisor had warned the plaintiff not to raise safety concerns, and their terminations occurred within one week of each other. Id. Thus, the district court found § 11(c) liability based on the close relationship. Id. Importantly, and as it relates to Defendants' argument here, the plaintiff's friend in Reich was fired because he was perceived to have (but had not actually) engaged in a protected activity. Id. Thus, in assessing liability, it was the defendant's perception that mattered. Accordingly, Defendants' argument that Mr. Elbode had to actually engage in a protected activity is contrary to the finding in Reich.

In short, it was sufficient that Mr. Lloyd perceived that Mr. Elbode engaged in a protected activity.[4] Defendants' citations and reliance on whether Elbode was employed at Lloyd Industries when he filed the OSHA complaint are misleading. As explained above, it was sufficient for Mr. Lloyd to have believed that Mr. Elbode engaged in a protected activity while he was an employee and that Mr. Spillane and Mr. Sanna were terminated as a result of their relationships with Mr. Elbode. Accordingly, Defendants' Motion will be denied on this point.

---

[4] Defendants also argue that Mr. Spillane's relationship with Mr. Elbode does not fall within the "zone-of-interest" protected by the OSH Act. (Defs.' Mem. of Law 16–18, ECF No. 85-1.) In support of this argument, Defendants cite to cases involving Title VII retaliation. In light of the clear rule in Reich v. Cambridgeport Air Sys., Inc., 26 F.3d 1187 (1st Cir. 1994) involving the OSH Act, I find this argument unpersuasive.

### (4)    **Causation Standard**

The jury was instructed that the Secretary had to establish "causation" by showing "either that A, the protected activity was a substantial reason for the action; or B, the discharge or other adverse action took place because of the engagement in the protected activity." (Am. Trial Tr., 46:24–47:13, Apr. 2, 2019, ECF No. 99.) Defendants argue that the instruction was improper because it allowed for Mr. Sanna's engagement in a protected activity to be a "substantial reason" for his termination, rather than only the "but for" reason. (Defs.' Mem. of Law 20–25, ECF No. 85-1.) The Secretary responds that the regulations promulgated under the OSH Act permit finding causation using either the "substantial reason" or "but for" test. (Resp. 12–15, ECF No. 90.)

The pertinent regulations upon which I relied in crafting the instruction provide:

> At the same time, to establish a violation of section 11(c), the employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action. <u>If the protected activity was a substantial reason for the action, or if the discharge or other adverse action would not have taken place "but for"</u> engagement in protected activity, section 11(c) has been violated.

29 C.F.R. § 1977.6(b) (emphasis added). While the Third Circuit has not opined on the propriety of giving the "substantial reason" and "but for" instruction, other circuit courts addressing this issue have held that both the "but for" and "substantial factor" tests are viable pursuant to this regulation. <u>See, e.g.</u>, <u>Perez v. Ohio Bell Tel. Co.</u>, 655 F. App'x 404, 409 (6th Cir. July 14, 2016) ("Indeed, the statutory scheme contemplates that employers may, and in some cases should, discipline or discharge an employee for 'legitimate reasons, or . . . non-prohibited considerations.' But discipline or discharge by an employer must be based on legitimate reasons alone. That is because an 'employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action.'" (quoting 29 C.F.R. § 1977.6) (alterations in original)); <u>Gaffney v. Riverboat Servs. of In., Inc.</u>, 451 F.3d 424, 453 (7th Cir. 2006) ("Under OSHA, in order for a

plaintiff to establish that he was terminated in retaliation for filing a health or safety complaint, he must show that the 'protected activity was a substantial reason for the action,' although it 'need not be the sole consideration behind discharge.'" (quoting 29 C.F.R. § 1977.6)). Moreover, the controlling regulations clearly set out that causation may be established under either test. 29 C.F.R. § 1977.6(b). "Regulations promulgated by the Secretary are entitled to be given great weight and are controlling if reasonable." Donovan v. Hahner, Foreman & Harness, Inc., 736 F.2d 1421, 1425 (10th Cir. 1984).

Similarly, district courts in other circuits have found that a plaintiff must show that his protected activity "was a 'but for' or 'substantial reason' for the adverse employment action." Perez v. Idaho Falls Sch. Dist., No. 91, No. 4:15-CV-00019-BLW, 2017 WL 743881, at *2 (D. Idaho Feb. 24, 2017); see also Perez v. Clearwater Paper Corp., 184 F. Supp. 3d 831, 842 (D. Idaho 2016) ("Causation is established where the protected activity was a substantial reason for the adverse employment action. Accordingly, 'the employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action.'" (quoting 29 C.F.R. § 1977.6(b))); Perez v. Panther City Hauling, Inc., No. 13-CV-0337-MJR-DGW, 2014 WL 2882919, at *9 (S.D. Ill. June 25, 2014) (same); Perez v. Renaissance Arts & Educ., Inc., No. 8:12-CV-514-T-MAP, 2013 WL 5487097, at *2 (M.D. Fla. Sept. 30, 2013) (same).

Ignoring the clear controlling regulatory language set out above, which allows for causation to be established under both the "but for" and "substantial reason" tests, Defendants argue that because the United States Supreme Court has found that retaliation claims under the Age Discrimination in Employment Act ("ADEA") and Title VII must be established using "but for" causation, the same reasoning must apply to retaliation claims brought under OSHA. (Defs.' Mem. of Law 20–21, ECF No. 85-1 (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 172, (2009);

Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).)  This argument is unpersuasive because the circuit and districts courts have continued to hold that causation for OSHA can be established using either the "but for" or "substantial factor" test, even after the United States Supreme Court cases cited by Defendants were decided.  See, e.g., Perez v. Idaho Falls Sch. Dist., No. 91, No. 4:15-CV-00019-BLW, 2017 WL 743881 (D. Idaho Feb. 24, 2017); Perez v. Clearwater Paper Corp., 184 F. Supp. 3d 831, 842 (D. Idaho 2016).

Defendants press that OSHA regulations are not entitled to deference pursuant to Chevron U.S.A. v. NRDC, 467 U.S. 837 (1984) because that the regulations conflict with the plain language of the statute and were not promulgated under the rule-making authority.[5]  (Defs.' Mem. of Law 20–22, ECF No. 85-1.)  I find this argument unpersuasive in light of the breadth of caselaw to the contrary, as discussed above.  See also Bianchi Trison Corp. v. Chao, 409 F.3d 196, 204 (3d Cir. 2005) ("We will affirm the Secretary's interpretation of OSHA standards if it is reasonable.  We must uphold the Commission's factual findings if they are supported by substantial evidence in the record as a whole. . . . In addition, we must defer to an agency's reasonable interpretation of an ambiguous administrative statute." (internal citations omitted)).

Accordingly, I find that the jury was properly instructed on the element of causation.[6]

---

[5]     Defendants' citations concern statutes other than the OSH Act.  See Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs., 794 F.3d 383, 395 (3d Cir. 2015) (interpreting § 401 of the Social Security Act in accordance with Chevron, finding that Congress expressed unambiguous intent using the mandatory language of "shall."); Prestol Espinal v. Attorney Gen. of U.S., 653 F.3d 213, 214 (3d Cir. 2011) (deciding "whether the Attorney General's regulation barring aliens who have been removed from the United States from filing a motion to reconsider and/or reopen, 8 C.F.R. § 1003.2(d), otherwise known as the post-departure bar, is inconsistent with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996").

[6]     Defendants further argue that there was not substantial evidence to show that Mr. Sanna was terminated "because" he engaged in a protected activity.  (Defs.' Mem. of Law 24–25, ECF No. 85-1.)  Because Defendants do not challenge the sufficiency of the evidence as to the

## B.    Sufficiency of the Evidence Challenges

### (1)    Sufficiency of the Evidence to Support Mr. Spillane's Verdict

Finally, Defendants argue that the Secretary presented insufficient evidence to allow the jury to find that Defendants retaliated against Mr. Spillane. (Defs.' Mem. of Law 15–18, ECF No. 85-1.) The Secretary responds that there was a significant body of evidence to support the finding that Mr. Lloyd suspected or believed that Mr. Spillane was involved in the OSHA complaint, which resulted in a retaliatory termination. (Resp. 16–17, ECF No. 90.)

Mr. Spillane testified that, in July and August of 2014, he had taken pictures of the machine involved in Mr. Elbode's injury. (Am. Trial Tr., 93:25–102:11, Mar. 28, 2019, ECF No. 96.) Rene Santos, another Lloyd Industries' employee, testified that he saw Mr. Spillane taking pictures of this machine. (Am. Trial Tr., 147:23–149:7, Mar. 29, 2019, ECF No. 97.) Mr. Santos also testified that he told Mr. Lloyd about seeing Mr. Spillane taking the pictures one day later. (Id.) Mr. Lloyd acknowledged that he knew that Mr. Spillane was taking pictures of this particular machine. (Id. 90:25–92:22.) He also testified that "the first thing [OSHA] wanted to look at was that machine" when they arrived for the inspection in November of 2014. (Id. 95:25–96:5.)

Mr. Lloyd also testified that he told another Lloyd Industries' employee, Mr. Richard Smith, that he believed that "there was a rat in the plant and [he] was going to find out who it was[.]" (Id. 94:11–95:10.) Mr. Lloyd made this comment referring to the fact that "somebody was telling information to OSHA about my company." (Id.)    Mr. Lloyd testified that he knew that Mr. Elbode and Mr. Spillane worked together in the Access Door Department and that Mr.

---

"substantial factor" test, and I find that the jury was correctly instructed on the "substantial factor" causation standard, Defendants' argument is inapposite.

Elbode filed the OSHA complaint that resulted in the November 2015 inspection. (Am. Trial Tr., 90:15–24, 112:4–12, Mar. 29, 2019, ECF No. 97.)

Prior to terminating Mr. Spillane, Mr. Lloyd testified that he had never disciplined Mr. Spillane or warned him about any performance concerns in any way. (Id. 96:9–19.) The jury also heard Mr. Lloyd testify that he never provides explanations for terminations, but he later acknowledged on cross-examination that he did in fact discuss concerns with employees before firing them. (Am. Trial Tr., 96:17–100:12, Mar. 29, 2019, ECF No. 97.) The jury also heard testimony that Mr. Lloyd fired Mr. Spillane on November 18, 2014, five days after the OSHA inspection. (Id. 95:25–96:5, 100:16–17.)

Based on the foregoing, I find that more than sufficient evidence was presented such that the jury could have found that Defendants retaliated against Mr. Spillane.

### (2) Defendants' "Legitimate Nondiscriminatory Reason" for Terminating Mr. Spillane

Defendants further argue that they are entitled to judgment as a matter of law because they proffered a legitimate nondiscriminatory reason for Mr. Spillane's termination (i.e., he was sleeping on the job). (Defs.' Mem. of Law 18–19, ECF No. 85-1.) The Secretary responds that sufficient evidence existed for the jury to find that the proffered reason for Mr. Spillane's termination was pretextual. (Resp. 18–19, ECF No. 90.)

Defendants are correct that the jury heard testimony that Mr. Lloyd fired Mr. Spillane because he was a bad worker and was sleeping in his car while on the clock. (Am. Trial Tr., 104:1–109:14, 125:20–128:16, 143:9–147:22, Mar. 29, 2019, ECF No. 97; Am. Trial Tr., 24:1–27:8, 118:22–120:11, 126:11–129:1, Apr. 1, 2019, ECF No. 98.) But the jury apparently rejected Defendants' theory because evidence was also presented that Mr. Lloyd never disciplined Mr. Spillane or warned him about performance concerns at any point prior to his termination. (Am.

Trial Tr., 96:9–19, Mar. 29, 2019, ECF No. 97.)  The jury also heard Mr. Lloyd testify that he did

not provide Mr. Spillane with any explanation for the termination, but yet he also acknowledged

on cross-examination that he had previously discussed explanations for terminations with prior

employees that were terminated for non-OSHA reasons.  (Am. Trial Tr., 96:17–100:12, Mar. 29,

2019, ECF No. 97.)  Tellingly, Mr. Lloyd fired Mr. Spillane five days after the OSHA inspection.

(Id. 95:25–96:5, 100:16–17.)

Based on this evidence, I find that there was more than sufficient evidence for the jury to

find that Mr. Lloyd's proffered reasons for terminating Mr. Spillane were pretext.  I decline to

disturb the jury's findings of fact and credibility determinations in light of the substantial evidence

presented by the Secretary.

### (3)     Sufficiency of the Evidence to Support Mr. Sanna's Verdict

Defendants also argue that they are entitled to judgment as a matter of law because they

proffered a legitimate nondiscriminatory reason for Mr. Sanna's termination (i.e., Mr. Sanna failed

to satisfy his managerial responsibilities).  (Defs.' Mem. of Law 26–28, ECF No. 85-1.)  The

Secretary responds that sufficient evidence existed for the jury to find that the proffered reason for

Mr. Sanna's termination was pretextual.  (Resp. 19–25, ECF No. 90.)

The jury heard testimony that Mr. Lloyd thought that Mr. Sanna would oversee OSHA

compliance at the plant.  (Am. Trial Tr., 32:1–34:1, 78:19–79:12, Apr. 1, 2019, ECF No. 98.)

However, the jury also received testimony that Mr. Lloyd never asked Mr. Sanna about his

knowledge and experience with health and safety when Mr. Sanna was hired.  (Am. Trial Tr.,

212:19–213:1, Mar. 28, 2019, ECF No. 96.)  And Mr. Sanna testified that Mr. Lloyd never asked

him to perform safety and health inspections of the plant or ensure that employees were trained on

safety and health.  (Id. 213:2–7.)  In fact, Mr. Lloyd did not tell Mr. Sanna that OSHA was coming

to inspect the plant in November 2014 and did not want Mr. Sanna to be involved with the OSHA inspection. (Id. 217:20–219:1.) Mr. Sanna testified that this was different than the previous interactions with OSHA representations where Mr. Lloyd had designated him as the point person to communicate with OSHA. (Id. 222:2–14.) Additionally, Mr. Lloyd's job description for the plant manager position that was posted in December 2014 did not include any duties related to safety. (Id. 224:24–226:10.)

The jury also heard uncontradicted testimony that Mr. Lloyd was ultimately responsible for safety and health in the plant per the settlement agreements that he signed with OSHA. (Am. Trial Tr., 65:1–70:10, Apr. 1, 2019, ECF No. 98.) Mr. Lloyd testified that he was ultimately responsible for ensuring that audiometric testing was being conducted at the plant. (Id. 70:11–71:11.)[7]

The jury also heard somewhat contradictory testimony by Mr. Lloyd that he fired Mr. Sanna because he was angry about the OSHA violations, but that he also believed that the violations were unsubstantiated. (Am. Trial Tr., 109:15–112:15, Mar. 29, 2019, ECF No. 97.) Additionally, Mr. Sanna and Mr. Lloyd consistently testified that Mr. Lloyd did not provide Mr. Sanna with any explanation for his termination. (Am. Trial Tr., 235:19–237:1, Mar. 28, 2019, ECF No. 96; Am. Trial Tr., 103:13–25, Mar. 29, 2019, ECF No. 97.) Mr. Lloyd testified that he had previously discussed explanations for terminations with prior employees that were terminated for non-OSHA reasons. (Am. Trial Tr., 96:17–100:12, Mar. 29, 2019, ECF No. 97.) (Am. Trial Tr., 42:20–43:15, Mar. 29, 2019, ECF No. 97.) And Mr. Sanna was terminated on that same day that OSHA issued $822,000 in citations against Defendants. (Id. 103:13–25.)

---

[7] The jury heard conflicting testimony about whether Mr. Lloyd did or did not instruct Mr. Sanna to hire a company to conduct the audiometric testing. (Id. 79:1–12; Am. Trial Tr., 27:8–28:23, Mar. 29, 2019, ECF No. 97.)

Based on this evidence, I find that there was more than sufficient evidence for the jury to find that Mr. Lloyd's proffered reasons for terminating Mr. Spillane were pretext. I decline to disturb the jury's findings of fact and credibility in light of the substantial evidence presented by the Secretary.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial (ECF No. 85) will be denied. My findings regarding damages will be forthcoming.

An appropriate Order follows.